548 A.2d 396

Doyle G. Dodson, et al. *v*. Zoning Hearing Board of The Town of Bloomsburg. Richard Maust, Appellant.

*William S. Kreisher, Kreisher & Gregorowicz,* for appellant.

*Alvin J. Luschas, Derr, Pursel & Luschas,* for appellees.

OPINION BY JUDGE CRAIG, October 13, 1988:

This zoning appeal by developer Richard Maust from an order of the Court of Common Pleas of the Twenty-Sixth Judicial District, Columbia County Branch, reversing a zoning hearing board's approval of the developer's condominium project, presents a single interpretation question with respect to the zoning ordinance of the Town of Bloomsburg:

> Where a parking setback requirement, found under the heading of 'Group Dwellings,' applies to group dwellings, but with an express exception for two-family and townhouse dwellings, is that exemption available to townhouses and two-family dwellings which make up a group dwelling development?

The trial court, noting that the development had been approved under the heading of "Group Dwelling," concluded that the "Group Dwelling" and "townhouse" concepts were mututally exclusive, so that the exemption

could not apply to townhouses and two-family dwellings proposed as constituent parts of a group dwelling development. Because the ordinance clearly contemplates the existence of townhouses and two-family dwellings within a group dwelling development, and expressly exempts such townhouses and two-family dwellings from the parking setback requirement, the decision must be reversed.

There is no factual dispute. The Bloomsburg R-U Residential-Urban District classification allows single-family, two-family and multiple-family dwellings as permitted uses, according to section 72 of the Zoning Ordinance. In that district, §73(3) contains a special exception provision allowing "group dwellings, in accordance with . . . §211(5)."

The developer's application to the town, in proceedings before the Bloomsburg Zoning Hearing Board, finally evolved as a group dwelling special exception application, to erect nineteen dwelling units on one lot in single ownership consisting of two side-by-side two-family dwellings and three side-by-side partywall buildings, with three or four units in each. (208a) The board approved the proposal as a group dwelling special exception, granting certain variances and the parking setback exemption.

Objectors appealed to the common pleas court. Upon reconsideration after a remand to the zoning hearing board for additional findings, the trial judge concluded that the group dwelling special exception grant was lawful, and he also approved all other matters except the board's decision that the project would not have to comply with a parking setback requirement, under group dwellings, that parking spaces be kept at least twenty feet away from any building. The trial judge declared the board's reasoning to be convoluted because of his conclusion that the board erred in treating the develop-

ment as consisting of a "group dwelling" and "town-houses" at one and the same time.

Thus, the sole question remaining, as noted above, is whether a development approved as a group dwelling, by way of special exception approval, can be viewed as containing, within it, townhouses and two-family units exempt from the parking separation requirement.

Ordinance §211(5) governs *"Group Dwellings;"* viewed in its entirety, it tells the whole story. That subsection (5), in pertinent part, including the parking setback provision in (f), provides as follows:

5. *Group Dwellings:* Whether as a basic permitted use or as a special exception shall conform to the following:

(a) When lots are served by public water and sewerage facilities, the lot area for a *group dwelling development* shall be not less than the following:

*Two-family dwellings* shall have a lot area of not less than 7,000 square feet (3,500/dwelling unit), entirely contiguous to the building site.

*Multiple-family dwellings, including* apartments, *townhouses,* and conversion apartments shall have a lot area per dwelling unit which shall average not less than the following:

[There follows lot-area-per-dwelling-unit requirements not at issue here.]

(b) Building Area . . . .

(c) Yards

Front yard depth . . . . . . twenty-five (25 feet)

Each side yard, width . . . fifteen (15) feet, excepting in the case of *townhouses,* side yards shall not be provided on the interior dwelling units, and only one (1) side yard shall be provided for the end dwelling unit.

Rear yard depth . . . . . . twenty-five (25) feet

(d) Interior Yards—[yard provisions not at issue here].

(e) Buffer Yards—[buffer provisions not at issue here].

(f) Off-street Parking

(1) Parking space, off street, shall be provided as set forth in Part 1-O.

(2) *Excepting* for single-family detached, *two-family,* and *townhouse* dwellings, *all parking areas shall be located at least twenty (20) feet from the dwellings.* The required parking spaces shall be situated on the same lot within not more than two hundred (200) feet of the dwelling units to be serviced.

. . . .

(g) Streets [street approval for group dwelling developments, not at issue here].

(h) Location—[group dwelling development location requirement not at issue here].

(i) Accessory Uses—[accessory uses authorized by special exception in group dwelling developments, not at issue here]. (Emphasis added, except as to first two words.)

Thus, this unified §211(5) of the Zoning Ordinance sets forth the group dwelling development regulations and, by repeated reference to two-family dwellings and townhouses within it, recognizes two-family dwellings and townhouses as constituent types within group dwelling developments, and treats them as such.

All that remains in this analysis is to confirm that the proposed group dwelling development and its constituent parts conform to the terms in §211(5) as those terms are defined in the ordinance. The definition section defines the group dwelling concept and the various types of dwellings as follows:

DWELLING, TWO-FAMILY: A building designed specifically for or occupied exclusively by two families living independently of each other and of one-story or two-story design.

DWELLING, MULTIPLE: A building used or designed as a residence for three (3) or more families living independently of each other and doing their own cooking therein, including apartment houses, apartment hotels, condominium, and group houses.

DWELLING, TOWNHOUSE: A structure housing not more than twelve (12) units and each dwelling therein containing walls on two sides in common with the walls of adjoining dwellings which are constructed as party or lot line walls but not including each end unit.

. . . .

DWELLING, GROUP: A group of two (2) or more two-family or multi-family dwellings, in any combination, occupying a lot held in single ownership.

All parties agree that the proposal in its entirety falls under the "GROUP DWELLING" definition because it consists of more than two two-family or multi-family dwellings occupying a lot held in single ownership.

As shown on the proposal's site plan (208a), two of the buildings in the group each contains units for "two families living independently of each other and of . . . two-story design." Hence, those units do come within the "TWO-FAMILY DWELLING" definition.

Although the definition of "MULTIPLE DWELLING," as quoted immediately above, does not cite "townhouse" as one of the examples included, the ordinance's §211(5)(a) itself describes "Multiple-family dwellings" as "including . . . townhouses," as well as other dwelling types.

As shown on the site plan proposal, the remaining buildings each contain three or four dwelling units side-by-side. Those buildings therefore fit the definition of "TOWNHOUSE DWELLING" because they are structures "housing not more than twelve (12) units," with each unit (other than end units) having "walls on two sides in common with the walls of adjoining" units, constructed as partywalls.

Hence, the matching of proposal elements with the ordinance definitions establishes that the present proposal consists of townhouses and two-family dwellings within a group dwelling development. The parking set-back requirement in §211(5)(f)(2), at issue here, does not appear in the ordinance as a requirement applicable generally to all buildings or even to all dwellings; by its placement in a list of requirements to which *Group Dwellings . . .* shall conform," the requirement is operative as to group dwellings, but under that heading is made expressly subject to a specific exemption for constituent two-family and townhouse dwelling types, which are the dwelling types involved here. In short, "group dwelling" and "townhouse" are not mutually exclusive concepts but, as the ordinance composition indicates, the latter is separately regulated as an optional component of the former.

Although the zoning hearing board's explanation may have been confusing, the board's ordinance reading and result were correct. Because its decision should have been affirmed as a matter of law and the objectors' appeal dismissed, the order of the trial court is reversed.

### ORDER

NOW, October 13, 1988, the order of the Court of Common Pleas of the Twenty-sixth Judicial District, Columbia County Branch, at No. 636 of 1986, entered October 8, 1987, is reversed.

Judge MACPHAIL did not participate in the decision in this case.